UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JANET RAINES,

                          Plaintiff,                    **ORDER**
                                                      CV 09-4889 (LDW)(ARL)

      -against-

NORTH SHORE LONG ISLAND JEWISH
HEALTH SYSTEMS ,
                          Defendant.
----------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

      Before the court is the plaintiff's letter motion dated August 30, 2011 seeking (i) to compel the production of the names, dates of employment, race and color and disciplinary files of all similarly situated Caucasian Senior Collectors for the period between August 2005 through August 2008, and (ii) to provide plaintiff an opportunity to redepose Paul Mule, Assistant Director of the Regional Claims Recovery Unit at defendant North Shore Long Island Jewish Health Systems, if necessary after plaintiff has reviewed the documents. Defendant opposes the application by letter response dated September 9, 2011 and seeks costs and fees. For the reasons set forth below, the plaintiff's motion is denied.

      The plaintiff, Janet Raines, ("Raines"), commenced this action on November 12, 2009, alleging discrimination on the basis of race and color in violation of Title VII, Section 1981 and NYSHRL. Specifically, Raines claims that the defendant North Shore Long Island Jewish Health Systems ("NSLIJ") subjected her to disparate treatment in the form of extraordinarily harsh disciplinary measures while granting preferential treatment to similarly situated Caucasian employees. By Order dated June 6, 2011, the undersigned, *inter alia*, granted in part plaintiff's motion to compel statistical information in support of her disparate treatment claim, limited to employees who worked in the system's customer service department, held similar rank and position, had the same supervisors and performed the similar job functions. Plaintiff now avers she is entitled to documents concerning employees in the collections department because during the deposition of Paul Mule, plaintiff discovered that employees in the collections department and customer service department had similar job functions, were subject to the same discipline administered by the same supervisor, and that while she was a "Senior Customer Service Representative," her official job title was "Senior Collector."

      Although plaintiff asserts that Mr. Mule testified her official title was "Senior Collector" and not Senior Service Representative," a review of the deposition transcript indicates that Mr. Mule noted two documents listed plaintiff's job title as Senior Collector, but testified that, "She was not a senior collector . . . She was a senior customer service representative." (*Sinha Letter*, dated August 30, 2011, Ex. A at 85-86.) With respect to the two documents, Mr. Mule testified that PeopleSoft, a NSLIJ program of which he was unfamiliar, may have listed the position as "Collector" because there was no option in that software system for "Senior Service Representative." (*Id*. at 86-87.) Moreover, a review of the parties' submissions indicates that

while there is some overlap in the job duties of a senior collector and senior customer service representative, the overlap is no more than five to ten percent of their total day.[1] (*Id*. at 30-31.) Thus, contrary to plaintiff's assertions, Mr. Mule's testimony does not change the court's finding in its June 6, 2011 Order that the specific job functions of employees in customer service centered primarily on the receipt of in-bound calls from patients who had inquiries related to the services they received from the system, including billing questions, patient stays, and related patient matters, (*id*. at 30), in contrast to employees in collections who dealt mostly with bad debt accounts and made outbound calls to debtors of the system with the primary goal of collecting debt.

Furthermore, contrary to plaintiff's assertion that Mr. Mule supervised and disciplined employees in both the collections and customer service departments, the parties' submissions and plaintiff's own testimony make clear that Mr. Mule did not have a direct role in the supervision of plaintiff's performance. Mr. Mule expressly testified that he did not supervise plaintiff's day to day performance and that the different and respective supervisors and managers for the collections and customer service departments would only notify him of an egregious employee matter that required upper management consultation. (*Id*. at 63-64; *Harris Letter*, dated September 9, 2011, Ex. E at 103-04.) Indeed plaintiff's own testimony reflects that in the customer service department she reported to her supervisor Leah Amante, and that she had reported to a different supervisor when she had been collections department. (*Harris Letter*, dated September 9, 2011, Ex. D at 23-24, 32, 103, 160.) Finally, plaintiff's complaint[2] and

---

[1]Mr. Mule testified as follows:
- Q: On a percentage basis, how often would you say in a day would a customer service rep make an outbound call?
  Mr. Harris: Objection
- A: I would say about ten percent – five to ten percent of their total day is making outbound calls, and ninety to ninety-five percent of the day is spent with inbound calls.
  \* \* \* \* \*
- Q: What are the duties of the customer service representatives with respect to the calls that are being made?
  Mr. Harris: Objection
  \* \* \* \* \*
- A: Take and make phone calls, and attempt to resolve patient accounts or patient inquiries.
- Q: On average, how long are the calls or the accounts with customer service before it's transferred over to collections?
  Mr. Harris: Note my objection
- A: Ninety days.

(*Id*.)

[2]In her complaint, plaintiff alleges: (i) on or about June 23, 1997, Plaintiff was hired by Defendant as a Collections Representative; (ii) on or around 2002, Plaintiff was promoted to Senior Collector; and (iii) in April 2004, Plaintiff was transferred to the Customer Service

testimony establishes that she was a senior customer service representative at the time of her termination and that her duties as a senior customer representative were different from her prior position as a senior collector. At her deposition, plaintiff testified as follows:

> Q  Paragraph 18. "In April 2004, plaintiff was transferred to customer service department to work as a senior customer service representative until August 2008." Is that accurate?
> A  Yes
> Q  Senior customer service representative now is a different position than senior collector, correct?
> A  Yes, it is.
> Q  You reported to different supervisors once you were in the collections department, correct?
> A  Yes
> Q  What were your duties as a customer service representative?
> A  To assist customers or patients rather to get their accounts resolved through either payments or insurance information or referring them to financial assistance as well as training other customer service reps, working on high balance reports.
> Q  Paragraph 20. "As a senior customer service representative, plaintiff answered calls, discussed payment options and schedules, prepared reports and assisted in training new employees." That's accurate?
> A  Yes.
> Q  So that in addition to the duties you just described were the duties that you performed as a senior customer service representative?
> A  Yes
> Q  Anything else?
> A  I really, I can't think of anything else.

(*Harris Letter*, dated September 9, 2011, Ex. D at 23-24.)

Accordingly, for the reasons previously stated by this Court, plaintiff's motion is denied. Defendant's request for sanctions is denied.

Dated: Central Islip, New York  
        September 14, 2011

SO ORDERED:

_____/s/_____  
ARLENE ROSARIO LINDSAY  
United States Magistrate Judge

---

Department to work as a Senior Customer Service Representative until August 2008. (Compl., ¶¶ 16-18.)